## RAILWAY V. RUDDELL.

Decided March 8, 1890.

*Acceptance of Deed—Presumption.*

> Certain citizens obligated themselves to procure, free of charge, the right of way for appellant's railroad. They obtained and tendered to appellant a deed from appellee conveying the right of way over his land, subject to certain conditions. Appellant declined to receive the deed, but built its road across appellee's land. Appellee sued to enforce the conditions of the deed. *Held:* Appellant was not obliged to notify appellee that it would not accept the deed, and its failure to give such notice raised no presumption of acceptance.

APPEAL from *Independence* Circuit Court.

J. W. BUTLER, Judge.

*Dodge & Johnson* for appellant.

The deed was never accepted by nor delivered to the railroad company, and it is not bound by its stipulations. Ewing was the agent of the appellee, and notice to him was notice to the appellee, that the company declined to accept the deed.

*Robert Neill* for appellee.

Ewing was the agent of the railway company. The deed was delivered to Thompson, the right of way agent of appellant, and was never returned, nor was appellee ever notified that the company declined to accept. By retaining the deed, entering upon and appropriating the right of way, the company made themselves liable under its terms.

On the subject of delivery and acceptance of a deed, see 3 Wash. R. P., 4th ed., pp. 283, 288, 294; 5 A. & E., Enc. Law, pp. 446, 447.

BATTLE, J. Certain citizens of Batesville, in this State, agreed with the St. Louis, Iron Mountain and Southern Rail-

way Company that, if it would extend its railway beyond Batesville to Cushman, they would procure for it the right of way for such extension, and executed to it a bond, and thereby obligated themselves to perform their agreement to pay all expenses of obtaining the right of way. Among these citizens was D. C. Ewing. They selected a committee to secure the right of way, and Ewing was made chairman. W. B. Ruddell owning land through which the line of the extension would probably be located, the committee applied to him for right of way over his land. At the instance of the committee, he finally executed a deed—in which he undertook to convey to the railroad company the right of way over his land on the following conditions: He should have all the timber on the right of way; the track should be located on the side of a hill; his fence, if interfered with, should be placed in good order and above overflow; the railroad company should pay all damages to his crop caused by it while its road was in course of construction; all water should be so "turned" as not to damage his land; and the company should make two crossings across its road over his land at points convenient to him and his tenants—and delivered it to Ewing. Ewing handed it to W. S. Thompson, who was at that time an agent of the company for the purpose of receiving and transmitting deeds to right of way to the company's chief engineer at St. Louis, Mo. When Ewing handed to Thompson the deed, he, Thompson, informed him that he did not believe the company would accept it, but that he would submit it, which he did, and the company declined to accept it on account of its conditions. Thompson informed Ewing of such refusal and requested him to get another deed, which Ewing made an effort to do and failed. The railroad company built its road over the land of Ruddell, but failed to comply with the conditions of the deed; and afterwards Ruddell brought this action to recover the damages caused by such non-compliance.

There was no controversy about the foregoing facts on the trial. Nearly all of them were proved by plaintiff. Evidence was also adduced tending to prove that the deed was never returned or offered to be returned to Ruddell; that the work on the road over plaintiff's land was commenced about four or five weeks after the deed was made; that, about this time and afterwards, Thompson and plaintiff had conversations about the construction of the road, and nothing was said about a refusal to accept the deed; that plaintiff never heard of a refusal to accept until after the commencement of this suit; and that it was after the railroad company had taken possession of the right of way when Ewing requested him to give another deed.

The court gave to the jury, at the instance of plaintiff, among other instructions, the following, against the objection of the defendant:

"1. The jury are instructed that this is an action for damages growing out of alleged violations of stipulations and conditions contained in a deed of conveyance from plaintiff to defendant, for a right of way for defendant's railroad, which deed, the plaintiff alleges, was by him executed and delivered to defendant through its agents.

"The defendant by its pleadings denies that the plaintiff conveyed to defendant a right of way, and denies that plaintiff executed and delivered to defendant a deed containing all or any of the covenants set forth in the complaint, or any deed whatever of such right of way.

"It will be a question for the jury to determine, first, whether plaintiff did execute such deed, and second, whether he delivered or caused it to be delivered to defendant's agent or agents.

"To make a deed valid and binding upon the parties, there must be a delivery to the grantee.

"It will be for the jury to determine, from all the evidence in the case, whether there was a delivery of the deed in

question in this case, and in considering and determining this matter, the jury are directed to look at all the facts and circumstances in the case, the action of the parties, their conduct with reference to the subject-matter of the alleged deed in question, and as to which of the parties or their agents retained and kept possession and control of the paper after its execution by plaintiff. But the act of delivering the possession of the deed to the hands of defendant's agent would not be conclusive evidence of an acceptance of it by defendant.

"2. The jury are further instructed that, if a deed is found in the grantee's hands, a delivery and acceptance will be presumed; and in this case if the jury find that the deed in question was executed by plaintiff, and by his direction and act placed in possession of defendant's agent authorized to procure such deed, at or near the day of the instrument's date, and thereafter the instrument remained in possession of the defendant's agent up to this date without any offer on part of defendant through its agent to return the instrument to the grantor, an acceptance of the instrument on the part of the defendant will be presumed, but such presumption may be rebutted by other evidence and the facts and circumstances proven in the case."

And refused to give among others the following asked for by defendant: "If therefore you believe from the evidence, that said Ewing knew or was informed by Thompson at the time he received the deed that he, Thompson, was unwilling or unauthorized to accept the deed for the defendant company in the shape such deed was then in; then the plaintiff will be as much bound by such knowledge or information as though he himself had possessed it. Also, would the plaintiff be bound by any subsequent knowledge or information said Ewing may have had or received from defendant's agents of its continued refusal to accept said deed."

The jury returned a verdict in favor of plaintiff; judg-- ment was rendered accordingly; the defendant moved for a new trial on the grounds, the court erred in giving instructions, at the request of plaintiff, over its objections, and in refusing to give instructions asked for by it, and the verdict was con- trary to the evidence. The motion was overruled; and it saved exceptions and appealed.

Appellee contends that appellant accepted the deed in question, and thereby entered into a contract with him to perform the conditions annexed to the grant of the right of way. His claim of the right to recover was based upon the supposed duty of the appellant to notify him of the non acceptance of the deed, in the event it was rejected. Upon this theory he recovered judgment. Was it the duty of the appellant to notify him of its non-acceptance? The answer to this question depends upon the answer of another: Who offered the deed to appellant?

Certain citizens of Batesville entered into a bond to ap-- pellant, and thereby for a valuable consideration obligated themselves to procure at their own cost the right of way from Batesville to Cushman for appellant, free of all charge or ex- pense to the railroad company. In an effort to perform their contract, they procured the deed from appellee. Instead of having the right of way conveyed to them and then convey- ing to appellant, they caused the appellee to convey directly to the railroad company. In discharge of their obligation, in part, they tendered the deed to appellant. The tender was an offer of the citizens to perform their contract with the appellant. The railroad company, having their obligation to procure for it the right of way free of all charge, and being unwilling to assume the expense of performing the conditions in the deed in order to secure the right of way that they were to secure free of all charge, refused to accept their offer. There was no duty to notify any one of the refusal, except those who had made the offer. No one else was entitled to

Acceptance of deed.

·or had the right to expect notice. Consequently appellee had no right to presume that the deed was accepted because he had not received the notice from appellant. No right could accrue to him because of appellant's failure to do an act that it was under no obligation or duty to perform. It should have ·given notice to the citizens, which it did. ´

We think the judgment should be reversed and the cause remanded for a new trial; and it is so ordered.